RADIO PATENTS CORPORATION, Patents Research Corporation, Radio Corporation of America, and William Dubilier

v.

UNITED STATES.

No. 50216.

United States Court of Claims.

Jan. 14, 1959.

Samuel Ostrolenk, New York City, for plaintiffs. Ostrolenk, Faber, Gerb & Soffen, New York City, were on the briefs.

George Howard White, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LARAMORE, Judge.

This is a suit for patent infringement. The Geffcken & Richter patent No. 1,898,046, hereinafter referred to as Geffcken, issued to plaintiff Radio Patents Corporation on February 21, 1933, and is now expired. Plaintiffs contend that claims 2, 7, 11, 15, 16, and 18 of the Geffcken patent have been infringed by certain electronic equipments used by defendant. Defendant contends that the patent claims in suit have not been infringed by the accused equipments and that the claims are not valid.

The subject of the Geffcken patent is "Electric Relay Device for Indicating Weak Currents." In general, this patent describes a cold cathode arc discharge relay device and circuits therefor. The technological principles involved may be briefly summarized as follows. An electrical relay is a device for controlling a flow of electricity in response to some signal. Such relays include various types of electronic tubes operated to control the flow of a current of electrical particles, called electrons, through the tube. Electronic relay tubes may be gas-filled or may be evacuated. Gas-filled tubes contain some gas which when ionized provides a path for the flow of electricity. Such gas-filled tubes having three electrodes are commonly known as thyratrons. Evacuated electron tubes generally include thermionic means, such as a heated filament, to emit electrons which provide the path for the flow of electricity through the tube. An arc discharge is a luminous bow of light between two electrodes and passes a relatively high value of electric current at low voltages. A glow discharge is a luminous glow or haze between two electrodes and passes minute values of electric current at relatively high voltages.

Plaintiffs contend that the Geffcken invention comprised the using of a cold cathode and an external circuit which makes the cold cathode arc. Plaintiffs contend that such a system revolutionized the thyratron art. The several patent claims upon which plaintiffs rely define the precise scope of the alleged invention. It is the claim language which we must first consider. The claims in suit are set forth in full in the accompanying findings. Claim 2 recites an arc electrical relay device comprising a gas discharge tube, solid cathode and anode electrodes, and an auxiliary electrode between the main electrodes. The claim specifies that the main electrodes are connected to a source of energy too low to produce ionization and discharge, and also specifies means to impose an auxiliary potential on the auxiliary electrode and further means to impose a controlling potential

on the auxiliary electrode, the latter controlling potential resulting in ionization and in arc discharge between the auxiliary electrode and the cathode which initiates a discharge between the main electrodes. Claim 7 is generally similar to claim 2 and recites that the tube is glass and the electrodes fixed. Claim 7 does not specify an arc device but defines a device for switching considerable current which seems to us to imply an arc discharge type of device. Claim 15 is also similar to claim 2 and recites a vessel filled with a uniform gaseous atmosphere. Claims 11, 16, and 18 recite electrical systems including input and output circuits. Claim 11 recites that the system includes high ohmic resistance in series with the main electrodes and a condenser in parallel with said electrodes. Claim 16 includes a reactance associated with the input circuit. Claim 18 adds potential means in the output circuit for alternately starting and stopping the electrical discharge.

Although plaintiffs urge that Geffcken relates to an electrical switch which turns current on and off, our consideration of the claim language indicates that the alleged invention is not that simple. The claim language is specific in pointing out the metes and bounds of the patent grant, and may not be broadened to cover a variety of different devices and systems used by defendant.

The accused thyratron controller used by defendant's Department of the Air Force and illustrated diagrammatically in General Electric wiring diagrams, plaintiffs' exhibits 2 and 3, is a complex circuit of apparatus for automatically controlling the azimuth and elevation of a turret in response to applied error signals. The thyratrons *V107–V112* used therein are gas-filled tubes each having an anode, two grids, a cathode and a separate thermionic filament. Plaintiffs urge that use of tube *V107* and its associated circuits infringes Geffcken claim 18. This claim specifically recites a potential means in the output circuit for alternately starting and stopping the electric discharge in said device and recites an elec-

tric reactance connected to the auxiliary electrode and to the input circuit to be charged. The accused controller is complex in that it utilizes a three-phase alternating current supply for producing rotation of azimuth and elevation motors in both directions of rotation. We are not able to find any basis for departing from our trial commissioner's finding that this controller circuit does not respond to the specific recital of claim 18, and likewise does not respond to the recital of other claims in suit. We note that tube *V107*, as well as numerous other thyratrons in the controller circuit, utilizes thermionic filaments in some instances as the tube cathode and in others the filament is separate from the cathode. In either case, it appears that a hot filament serves as an emitter of electrons and provides for circuit and tube operation of a character specifically different from the cold cathode type of operation disclosed by Geffcken and stressed by plaintiffs.

The accused Rawin elevation drive motor control circuit, plaintiffs' exhibit 5, used by defendant's Department of the Army, includes type *3C23* thyratrons and associated circuitry. These tubes contain a mixture of an inert gas and mercury, and each tube has an anode, a control grid, and a filamentary thermionic cathode. Plaintiffs urge that use of such a tube and its circuit infringes Geffcken claim 15 which recites, among other limitations, that the tube (vessel) is filled with a uniform gaseous atmosphere. While the Geffcken specification is silent as to the intended meaning of uniform gaseous atmosphere, we note that counsel in presenting this claim to the Patent Office argued that it is essential that the gaseous condition within the tube remain absolutely stable and uniform and that such operation cannot be obtained with mercury pool cathodes. We conclude that claim 15 is not infringed by defendant's circuit utilizing thyratrons containing mercury and a hot filamentary cathode. We likewise conclude that the Rawin apparatus does not infringe the other claims in suit.

The accused Auxiliary Control Panel circuit, plaintiffs' exhibit 10, used by defendant's Department of the Navy, includes a relay tube, Western Electric *313CA*, containing a cold cathode, two control electrodes, an anode, and described as a vacuum tube. A vacuum tube is a sealed tube with the contained gas exhausted to a pressure low enough to permit the passage of electric discharges between metallic electrodes therein. Plaintiffs urge that use of the *313CA* tube and its circuit infringes Geffcken claim 2. This claim recites an arc discharge device including an auxiliary electrode between the main electrodes and also recites auxiliary potentials and controlling potentials. Plaintiffs urge that tube *313CA* is not a vacuum tube of the type disclaimed by plaintiffs at trial. In objections to defendant's requested findings, plaintiffs urged that the characteristics of the *313CA* tube, shown in plaintiffs' exhibit 20 for glow discharge operation, are such that the tube when used in defendant's auxiliary control panel circuit might operate in arc discharge and would need to operate thus only once. It is our opinion that the accused panel circuit with tube *313CA* does not respond to the specific recital of claim 2 in the manner urged by plaintiffs, and likewise does not respond to the specific recitals of the other claims in suit.

In reaching our conclusion that each of the several claims in suit is not infringed by any of the several currently accused thyratron tubes and associated circuits used by defendant, we have not been unmindful of the testimony of plaintiffs' witnesses. Consideration of the statements of all witnesses with respect to operation of the several accused circuits and their component parts convinces us that the accused equipments do not include each and every element and applied potential specified in the claims in suit, and that such apparatus does not function to produce the same results as delineated in the Geffcken patent specification.

In view of the fact that we have concluded that the patent claims in suit have not been infringed by defendant, we need not pass upon the validity of the Geffcken patent. Noting that defendant has urged a number of prior patents and prior publications as invalidating the claims in suit, and has also urged invalidity based on alleged defects in and alleged inoperativeness of the Geffcken application disclosures, we find it unnecessary to consider such issues in our disposal of this litigation.

The petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.